NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CESAR E. FERREIRO,<br><br>Claimant,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No.: 2:15-cv-04320 (CCC)<br><br>OPINION |

**CECCHI, District Judge.**

### I.  INTRODUCTION

Before the Court is Claimant Cesar E. Ferreiro's appeal ("Claimant") seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income ("SSI") under section 1614(a)(3)(A) of the Social Security Act ("SSA"). 42 U.S.C. § 405(g). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part and vacated and remanded in part.

### II.  BACKGROUND

#### A.  Procedural Background

On December 28, 2011, Claimant filed for SSI alleging disability beginning September 1, 2011 due to major depressive disorder, paranoia, anxiety, and suicidal thoughts. (Tr.[1] at 235.) The claim was denied initially on May 29, 2012, and upon reconsideration on November 7, 2012. (Plaintiff's Brief ("Pl. Br."), ECF No. 11 at 1.) Claimant then filed a written request for hearing on January 3, 2013. (Id.) On April 4, 2013 and August 15, 2013, hearings were held before ALJ

---

[1] "Tr." refers to the certified record of the administrative proceedings.

Dina R. Loewy. (Id.) The ALJ denied the claim on February 28, 2014 and the Appeals Council affirmed that denial on April 24, 2015. (Id. at 2.) On June 2, 2016, Claimant instituted this action, alleging disability due to orthopedic and psychiatric conditions. (ECF No. 1 at 2.)

### B.   Factual Background

Claimant is a 45-year-old male, and was 40 years old when he applied for SSI. (Tr. at 214.) He completed 11th grade in regular education courses. (Id. at 118.) Claimant worked part time from 1994 to 2000 and again from 2005 to 2008 stocking shelves in a lingerie store. (Id. at 119.) He stopped working on December 28, 2008 to tend to his sick mother until she passed away in 2011. (Id.)

On December 28, 2011, Claimant filed an application for SSI alleging disability due to major depressive disorder, paranoia, anxiety, and suicidal thoughts. (Id. at 235.) During the relevant period, Claimant lived alone in a one-bedroom apartment. (Id. at 118.) He was dependent on welfare benefits for income. (Id. at 355.) He spent most of his days sleeping, watching TV, and spending time with his sister who took care of him.[2] (Id. at 121.)

In October 2011, Claimant saw his primary care physician, Jorge Verea, M.D., and complained of a cough and headaches. (Id. at 337-38.) At this visit, Dr. Verea noted Claimant's back and spine were normal and listed anxiety as a working diagnosis. (Id. at 336-37.) A few weeks later, Claimant visited the hospital complaining of depression after the death of his mother. (Id. at 321.) He was discharged sixteen hours after admission with prescriptions for Lexapro and Trazodone. (Id. at 322.) In January 2012, Claimant returned to Dr. Verea, who added depression, chest pain, headaches, anxiety, and hypertension as diagnoses and prescribed Zoloft. (Id. at 335.)

---

[2] Claimant testified at the April 4, 2013 hearing that his oldest sister, who lives approximately two miles from him, cooks and cleans for him. (Id. at 127.) He also testified that he does his own laundry. (Id.)

2

Claimant has been on and off treatment for his depression since 2008. (Id.) In February 2012, Claimant began seeing Dr. Wei Wang, M.D., for depression, anxiety, and irritability. (Id. at 370.) Dr. Wang diagnosed Claimant with bipolar disorder, and prescribed him Xanax, Zoloft, Depakote, and Clonazepam. (Id. at 371.) In August 2012, Dr. Wang reported Claimant was "responding well to medication[] regimen" in terms of his bipolar disorder, and noted Claimant denied experiencing any symptoms. (Id. at 413.)

In May 2012, Claimant saw Dr. Anthony Candela, Ph.D., a consultative psychologist. (Id. at 355-56.) Claimant reported in his psychiatric evaluation he was able to do chores around the house, shop, do laundry occasionally, and generally "care for himself." (Id. at 356.) Dr. Candela noted Claimant's thoughts were tangential at times; his speech was pressured; his mood was depressed; his insight, judgment, and reasoning were poor; and he seemed to be in the borderline level of intellectual functioning. (Id. at 356-57.) His Global Assessment of Functioning ("GAF")[3] evaluation was 45-50, signaling an individual with "serious symptoms or serious impairments in social, occupational or school functioning." (Pl. Br. at 14 n.2.)

In August 2012, Dr. Alexander Hoffman, M.D., a consultative physician, examined Claimant. (Tr. at 375-76.) Dr. Hoffman found Claimant walked with a normal gait, and his range of motion was full, except for 60-65 degrees "bending at the back." (Id. at 376.) Dr. Hoffman, however, did not diagnose a back impairment, noting that Claimant only has "some trouble bending at the back." (Id.) In addition, Dr. Hoffman found that Claimant's straight leg raise went

---

[3] A GAF scale is used by clinicians to report an individual's overall level of functioning likely to accompany psychiatric illnesses. See Lopez v. Barnhart, 78 F. App'x. 675 (10th Cir. 2003) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000)).

"to at least 65 degrees bilaterally." (Id.) In his examination, Dr. Hoffman did not diagnose any physical impairment, back or otherwise, based on his findings. (Id.)

In April 2013, Claimant visited the hospital with suicidal ideation and complained of hearing his mother's voice. (Id. at 339-40.) His examining psychiatrist assessed a GAF score of 59, suggesting moderate symptoms, found Claimant "relatively stable," and released Claimant shortly thereafter. (Id. at 444.) In June 2013, Dr. Sanchez, who was covering for Dr. Wang, noted Claimant was responding well to his medications and treatment regimen. (Id. at 460.)

## II. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential

standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B.  Determining Disability

Pursuant to the SSA, to be eligible for benefits, a claimant must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The SSA follows a five-step, sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the claimant has an impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the claimant can perform. Id.

The evaluation continues through each step unless it is determined at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n.2.

### III. DISCUSSION

#### A. Summary of the ALJ's Findings

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since December 28, 2011, when he filed for SSI. (Tr. at 68.) At step two, the ALJ found Claimant had the following "severe" impairments during the relevant period: a depressive disorder and a history of alcohol abuse. (Id.) At this stage, the ALJ found although the Claimant testified that he

has back problems, there was no diagnosis in the record of a back impairment by a medically acceptable source. (Id.)

At step three, the ALJ found Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) With respect to the severity of Claimant's mental impairments, considered singly and in combination, the ALJ found they did not meet or medically equal the criteria of listings 12.04 (defining "affective disorders") or 12.09 (defining "substance addiction disorders"). (Id.) In making her decision for both the 12.04 and 12.09 Listings, the ALJ is required to consider whether the "paragraph B" criteria are satisfied. (Id.) Additionally, the ALJ must consider whether "paragraph C" criteria are satisfied for the 12.04 Listing. (Id.) Paragraph B[4] and C[5] describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. Soc. Sec. Admin., Disability Evaluation Under Social Security, https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.ht

---

[4] "To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, mean three episodes within one year, or an average of once every 4 months, each lasting for at least 2 weeks." Soc. Sec. Admin., Disability Evaluation Under Social Security, https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#Top.

[5] "Paragraph C" is a list of additional functional criteria for each alleged mental disorder. (Id.) The paragraph C criteria for Listing 12.04 requires a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." (Id.)

m#Top. Ultimately, the ALJ concluded neither the paragraph B nor paragraph C criteria were satisfied. (Tr. at 68-69.) The ALJ found: (1) in activities of daily living, Claimant had mild restriction; (2) in social functioning, Claimant has moderate difficulties; (3) with regard to concentration, persistence, or pace, Claimant has moderate difficulties; and (4) Claimant has experienced no episodes of decompensation of extended duration. (Id. at 69.) Because the ALJ found Claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. (Id.) The ALJ also found the evidence failed to establish the presence of "paragraph C" criteria because there was no evidence of decompensation, the likelihood of future decompensation, or the inability to live outside a highly supportive living arrangement. (Id. at 70.)

The ALJ concluded Claimant has the RFC to perform a full range of work at all exertional levels but within the following nonexertional limitations:

> [T]he ability to perform only simple, routine tasks; the ability to perform only occasional decision making; the ability to tolerate only occasional changes in the work setting; the need to avoid interaction with the public; the ability to only occasionally interact with coworkers superficially; and the ability to tolerate only occasional supervision.

(Id.) The ALJ found Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible for several reasons. First, a closing summary of May 2011 from Palisades General Hospital indicated the Claimant's "presentation was always questionable as to intent and motivation."[6] (Id. at 318, Ex. B1F at 8.)

---

[6] The psychiatric assessment also contained the following note: "On the fact of things he was content with his life and uninterested in change – at times he could admit he was discontent – he seemed to rely on externalizing and blame of others and has some somatic preoccupation. Doctors found no substantial health problems that angered him, malingering for disability was

The ALJ also stressed Claimant has only been hospitalized twice for psychiatric reasons, and both of those times were for relatively short periods. (Id. at 72.)

At step four, the ALJ found Claimant has no past relevant work. (Id.) Finally, at step five, the ALJ considered Claimant's age, education, work experience, and RFC and concluded Claimant has the ability to work in jobs that exist in significant numbers in the national economy. (Id.) The ALJ emphasized Claimant was forty years old, which is defined as a younger individual, on the date the application was filed. (Id.) A vocational expert ("VE") testified that given all of Claimant's individual factors, he would be able to perform the requirements of representative occupations such as hand packager, garment sorter, and assembler of small products. (Id. at 73.) The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), and found "[C]laimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id.) Thus, the ALJ concluded Claimant is not disabled under §§ 1614(a)(3)(a) of the SSA. (Id. at 74.)

**B.   Analysis**

Claimant makes the following arguments in support of his contention the ALJ's decision should be reversed: (1) the ALJ's step two finding was not supported by substantial evidence because the decision failed to consider the extent of Claimant's back impairment and did not mention Claimant's psychiatric diagnosis and borderline intellectual functioning; (2) the ALJ's step three finding was not supported by substantial evidence because the RFC assessment was not accompanied by specific references to evidence of record; and (3) the ALJ's step five finding was

---

suspected. His mother received disability and client cared for her and therefore did not want to go to work himself." (Tr. at 318.)

9

not supported by substantial evidence because the hypothetical questions posed to the VE did not fully account for Claimant's limitations. (Pl. Br. at 9-26.) The Court will address each argument in turn.

### 1. The ALJ's Step Two Finding

Claimant first argues the ALJ's step two finding was not supported by substantial evidence because the ALJ improperly discounted the extent of his back impairment. Specifically, Claimant asserts: (1) a computerized tomography ("CT") scan showing a three level disc disease and single level bilateral spinal canal stenosis are not "mild" findings, and (2) the ALJ did not report Dr. Hoffman's finding that Claimant was substantially limited in his ability to bend his back. (Id. at 11.) Claimant contends these results are evidence of a severe back impairment that "more than minimally" restricts his ability to perform any work-related function such as lifting, carrying, bending, crouching, crawling, kneeling, etc. (Id. at 10-13.)

At step two, a claimant must prove that an impairment "significantly limits [his] physical or mental ability to do basic work activities" for it to be deemed "severe." 20 C.F.R. § 416.920(c). A claimant must demonstrate an impairment has more than a "minimal effect" on his ability to work. Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144 (3d Cir. 2007). Here, substantial evidence supports the ALJ's decision that Claimant's back impairment did not have more than a minimal effect on his ability to work. (Tr. at 68.)

First, although a CT scan showed some abnormal findings including a three level disc disease and single level bilateral spinal canal stenosis, the ALJ noted Claimant displayed a normal range of motion and steady gait in other evaluations throughout the medical record. (Id. at 335, 376, 391-92, 432, 436.) Further, Claimant did not report any physical pain and there was no evidence Claimant sought treatment for back pain during the relevant period. (Id. at 444.)

Second, despite Dr. Hoffman's finding that Claimant bent at his back "maybe about 60-65 degrees," courts have found this flexion to be within the normal range of motion for the lumbar spine. See Jerrell v. Astrue, No. 10-72, 2012 WL 32467, at *7 n.7 (W.D. Va. Jan. 6, 2012) (finding that 60 degrees of flexion is considered normal (citing Range of Motion, Lumbar ROM Table, http://www.chiro.org/forms/romchiro.html (last visited July 29, 2016)). Moreover, while Dr. Hoffman noted that Claimant had some trouble bending at the back, Dr. Hoffman did not diagnose a back impairment or any other physical impairment. (Tr. at 376.) Therefore, the ALJ reasonably found Claimant did not have any severe physical restrictions.

Claimant argues the ALJ failed to take into account certain mental health impairments at step two when determining Claimant's disabilities. (Pl. Br. at 14.) Claimant argues the evidence indicates he is "suicidal, often psychotic, suffers recurrent major depression and functions, [and] cognitively speaking at the borderline level of intellectual ability." (Id.) At step two, the ALJ concluded Claimant had mental health impairments, namely, a depressive disorder and a history of alcohol abuse, and the sequential evaluation process moved forward. Moreover, the ALJ discussed Claimant's psychiatric limitations and found that while they are severe, they are not disabling. (Tr. at 71.) With respect to Claimant's intellectual limitations, the ALJ noted that Claimant "had clear and coherent speech, had good insight, and had fair concentration and memory." (Id.) As such, the ALJ fully considered Claimant's mental impairments.

### 2. The ALJ's Step Three Finding

Claimant next challenges the ALJ's RFC assessment. (Pl. Br. 15-27.) First, Claimant contends the ALJ did not articulate a defensible, rational, evidentiary case regarding Claimant's RFC. (Id. at 17.) Claimant asserts the ALJ must explain which evidence contradicts her finding and which evidence supports her finding and why one set of medical data is found more persuasive

11

than the other. (Id.) Second, Claimant argues the ALJ's RFC determination is deficient because her evaluation did not mention his psychiatric disorders and borderline intellectual functioning. (Id. at 14-15.) Specifically, Claimant asserts the record shows he has suicidal tendencies, is often psychotic, has a history of depression, and is, cognitively speaking, at the borderline of intellectual ability. (Id. at 14.)

First, while an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," (Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996)), Claimant here only argues the ALJ should have interpreted the medical evidence differently. (Pl. Br. 15-17.) Under the substantial evidence standard of review, the issue is whether sufficient evidence reasonably supports the ALJ's analysis, not whether the evidence could support a different finding. See Logan v. Colvin, No. 14-4571, 2015 WL 5722391, at *7 (D.N.J. Sept. 29, 2015) (finding "[t]he role of the District Court in reviewing an ALJ's denial of disability benefits is not to reweigh the evidence presented, but instead to determine whether the ALJ made a decision supported by substantial evidence"). Therefore, Claimant's argument regarding the ALJ's articulation of his RFC is without merit.

Second, Claimant argues the RFC determination that allows for "simple, repetitive tasks" automatically disqualifies him from disability owing to psychiatric factors, and that neither his psychotic disorder nor his borderline intellectual functioning were mentioned in this determination. (Pl. Br. at 21.) The ALJ concluded Claimant had moderate difficulties in concentration, persistence, or pace and limited him to simple, routine tasks with only occasional

12

decisionmaking, occasional changes in the work setting, no public contact, and only occasional and superficial interaction with coworkers, and occasional supervision. (Tr. at 70.)

The Court finds this decision was supported by ample evidence in the medical record. First, since the ALJ decided in step two that Claimant did not have any significant physical impairments, the ALJ reasonably found that Claimant did not need any physical restrictions in the RFC. (Id. at 68-72.) Second, the ALJ acknowledged Claimant's mental health symptoms, demonstrated by his consistent receipt of mental health treatment, as well as documented by Dr. Candela, his psychologist. (Id. at 71.) The ALJ noted that Claimant at times had "a stressed affect, was depressed and agitated, and has poor insight, judgment, and reasoning" as well as psychiatric limitations. (Id. at 72.) However, other examinations of the record indicated these limitations are not disabling, including the fact that Claimant had only been to the hospital twice for psychiatric reasons, both for relatively short time periods. (Id.) Also, Claimant's treating mental health professionals indicated his medications were working in terms of controlling Claimant's symptoms, further suggesting his symptoms were not disabling. (Id. at 360, 415, 420, 459, 460.)

Additionally, the ALJ expressed doubt as to Claimant's motives in seeking disability benefits. (Id. at 72.) Specifically, she noted some treating physicians suspected Claimant was exaggerating his claims for the purpose of avoiding work and collecting disability benefits. (Id. at 318.) An ALJ may "reject such claims if [s]he does not find them credible," Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999), and "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible." Robinson v. Colvin, 137 F. Supp. 3d 630, 647 (D. Del. 2015) (quoting Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)). Therefore, the ALJ had the right to make credibility determinations

regarding Claimant's mental health limitations. For the foregoing reasons, the ALJ's RFC determination was supported by substantial evidence.

### 3. The ALJ's Step Five Finding

Lastly, Claimant asserts the ALJ's step five finding was not supported by substantial evidence because the VE's testimony is unreliable. Claimant argues a hypothetical question asked to the VE did not reflect all of the Claimant's credibly established impairments and limitations. (Pl. Br. at 17-18.) See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d. Cir. 2005) (finding the ALJ must convey to the VE all of the credibly established limitations); see also Ramirez v. Barnhart, 372 F.3d, 546 (3d. Cir. 2004) (stating when an ALJ incorporates a claimant's limitations into a hypothetical, "great specificity" and accuracy is required). Specifically, Claimant asserts the ALJ's hypothetical to the VE that contemplated the ability to perform "routine, low stress and low contact" work did not properly account for Claimant's moderate difficulties in maintaining concentration, persistence, or pace. (Pl. Br. at 21.)

An ALJ may ask a VE to "offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560. Here, the ALJ first asked the VE to assume a hypothetical claimant who:

> Has got no exertional limitations, but has got only avoiding concentrated exposure to irritants and then work limited to simple, routine tasks. Only occasional decision making. Only occasional changes in the work setting, no interaction with the public. Only occasional interaction with coworkers that is superficial, and only occasional supervision, and ask whether there are any jobs in the national economy for the hypothetical claimant.

(Tr. at 139.) The VE found this hypothetical person could perform the jobs of a hand packager, garment sorter, and assembler of small products. (Id. at 139-40.) The ALJ then added the limitations of light work with only occasional climbing ramps or stairs; never climbing latters,

ropes, or scaffolds; and occasionally balancing, stooping, kneeling, crouching, and crawling. (Id. at 140.) The VE responded that considering those added limitations, the jobs listed would still be available to the hypothetical person. (Id.)

At step three, the ALJ determined Claimant had moderate difficulties with regard to concentration, persistence, or pace. (Id. at 69.) The ALJ's hypothetical question to the VE must accurately convey all credibly established limitations. See Green v. Colvin, No. 14-1942, 2016 WL 1696797 at *3 (E.D. Pa. Apr. 27, 2016) (finding an ALJ's RFC evaluation and hypothetical question were deficient because they failed to incorporate the ALJ's own findings that the claimant has mild limitations with concentration, persistence, or pace).

Here, it is unclear whether the ALJ sufficiently included her step three factual findings in the hypothetical question to the VE. The ALJ noted Claimant would need to be "avoiding concentrated exposure to irritants and then work limited to simple, routine tasks. Only occasional decision making . . ." (Tr. at 139.) This limitation to simple, routine, low stress, and low contact work does not appear to account for Claimant's mental limitations in the RFC determination. Further, the ALJ did not expressly mention Claimant's borderline intellectual functioning. As such, this precludes meaningful review. On remand, the ALJ shall ask a hypothetical to the VE that reflects all of Claimant's credibly established impairments and limitations.

## IV. CONCLUSION

For the foregoing reasons, the Court affirms in part and vacates and remands in part the ALJ's decision. An appropriate order accompanies this Opinion.

DATED: September 21, 2016

**CLAIRE C. CECCHI, U.S.D.J**